UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   **JUN 2 3 2014**

-----------------------------------------------------------------X
                           :

MEDITERRANEAN SHIPPING CO.        :
USA INC.,                           :
                            :
            Plaintiff,             :            13-cv-1608 (KBF)
                            :
        -v-                       :          MEMORANDUM
                            :         DECISION & ORDER
AA CARGO INC.,                    :
                            :
            Defendant.        :
                            :
-----------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On March 11, 2013, plaintiff Mediterranean Shipping Company USA Inc.
("MSC") initiated this action against defendant AA Cargo, Inc. to recover
$232,984.00 in accrued demurrage in connection with defendant's alleged breach of
contract for failing to clear certain shipping containers from their terminals of
arrival, remove the cargo, and return the containers to the terminal. (Compl., ECF
No. 1; Pl.'s Rule 56.1 Stmt. of Undisputed Facts ("Pl.'s 56.1") ¶ 33.) On May 13,
2013, defendant answered the complaint and counterclaimed for, inter alia, certain
violations of the Shipping Act. (ECF No. 7.) On May 31, 2013, plaintiff answered
the counterclaims. (ECF No. 9.)

Now before the Court is plaintiff's motion for summary judgment. (ECF No.
30.) For the following reasons, plaintiff's motion is GRANTED IN PART and
DENIED IN PART.

## I.     BACKGROUND

Plaintiff is the United States agent for Mediterranean Shipping Company S.A., a Swiss common carrier of cargo for hire. (Pl.'s 56.1 ¶ 2; Rule 56.1 Counterstatement of Facts ("Def.'s 56.1") ¶ 2, ECF No. 45.) Generally, a party interested in booking cargo with plaintiff will contact plaintiff seeking a price quotation. (Pl.s' 56.1 ¶ 4; Def.'s 56.1 ¶ 4; Decl. of Teri Krusen in Supp. of Pl.'s Mot. for Summ. J. ("Krusen Decl.") ¶ 6, ECF No. 33.) Once the parties agree on a price, plaintiff issues a "booking confirmation" to the putative shipper; the booking confirmation notes the name of the shipper for whom plaintiff has agreed to carry cargo and refers to the terms and conditions of the bill of lading. (Krusen Decl. ¶ 6.) Once the cargo is loaded on board a carrying vessel, plaintiff issues a bill of lading to cover the carriage of that cargo from the United States to its destination. (Id. ¶¶ 3, 6.) Plaintiff allows a set number of days in which shippers and receivers of cargo may use its container equipment free of charge, referred to as "free time." (Pl.'s 56.1 ¶ 6; Def.'s 56.1 ¶ 6.) The charge for exceeding the allowed free time is known as "demurrage." (Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 7.)

In this case, plaintiff contracted with defendant to carry four containers from California to Brazil. (Pl.'s 56.1 ¶¶ 9, 12; Def.'s 56.1 ¶¶ 9, 12; Krusen Decl. ¶ 8.) All four containers arrived at their respective ports, but none were cleared from the terminal at the port of discharge within the free time allowed by plaintiff's tariff governing container usage at the discharge port. (Pl.'s 56.1 ¶¶ 18, 22, 26, 30; Def.'s 56.1 ¶¶ 18, 22, 26, 30; Krusen Decl. ¶ 10.)

2

Plaintiff issued four freight invoices to defendant that listed "AA CARGO INC." as the party to be invoiced, and issued four booking confirmations to defendant that listed "AA CARGO INC." as the shipper. (Krusen Decl. ¶ 9, Exs. A, C.) However, the four bills of lading issued in this case list the shipper as defendant operating as an "agent" or "as agents" for other parties. (Id. ¶¶ 19–22, Exs. D–G.) Plaintiff states that it "did not become aware of the existence of a third-party" principal on whose behalf defendant was acting "until after MSC agreed to carry the cargo." (Id. ¶ 9.) However, Arben Hodza, defendant's president and sole employee, claims that he spoke on the telephone with two of plaintiff's representatives, and "indicated that [defendant] was acting as agent for shippers that [he] identified by name for each respective shipment." (Decl. of Arben Hodza in Opp. to Pl.'s Mot. ("Hodza Decl.") ¶ 5, ECF No. 43.)

Plaintiff issued four booking confirmations to defendant. The confirmations refer to plaintiff's terms and conditions contained in the bill of lading; they state, "Please be informed that MSC has implemented the use of a new [bill of lading] format. We suggest that you read the terms and conditions since some of the clauses have been changed." (Krusen Decl. ¶ 6; Ex. C.) The bills of lading state:

> IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY
> ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS,
> WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON
> THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING
> AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE
> TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT.

(Id. Exs. D–G.)

3

Paragraph 3 of the standard terms and conditions contained in the bills of lading, which also appear on plaintiff's website, states, inter alia, "The terms and conditions of the Carrier's applicable Tariff are incorporated into this Bill of lading. Particular attention is drawn to terms and conditions concerning additional charges including demurrage . . . ." (Id. Ex. B, at ¶ 3.)

The terms and conditions contained in the bills of lading, which are also available on plaintiff's website, define "Merchant" as "the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person." (Id. Ex. B, at ¶ 1 (emphasis added).)

Paragraph 14.8 of the terms and conditions states, inter alia, "The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge of the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff." (Id. ¶ 25, Ex. B, at ¶ 14.8 (emphasis added).) Paragraph 16.3 states, "Every Person defined as 'Merchant' in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder." (Id. ¶ 26, Ex. B, at ¶ 16.3.)

Paragraph 14.7 of the terms and conditions states as follows:

If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will

4

not be liable for any loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

(Id. ¶ 25, Ex. B, at ¶ 14.7.)

## II.   STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d

5

at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

III.    DISCUSSION

A.    Plaintiff's Claims for Demurrage

This case requires the Court to interpret a clear contract. On review of that contract, this case presents no genuine issue of material fact that precludes summary judgment. Based on the clear contractual terms, plaintiff is entitled to

6

payment of demurrage by defendant, but is not entitled to the legal expenses
incurred in pursuing this action.

      1.    Demurrage

The parties in this case entered into four contracts—i.e., the bills of lading
and applicable tariffs that were expressly incorporated into the contracts (see
Krusen Decl. Ex. B, at ¶ 3). See Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134,
144 (1964) (Douglas, J., dissenting) ("The shipping contract consists of the bill of
lading and the applicable tariffs lawfully published and filed, from which there may
be no departure.") (internal citations omitted).  The terms and conditions printed on
the bills and lading define "Merchant" as, inter alia, "the Shipper, Consignee, . . . or
anyone acting on behalf of this Person"—thus including defendant, who is listed as
the shipper on each of the bills of lading, whether alone or as agent for other
parties. (Krusen Decl. Ex. B, at ¶¶ 1, 19–22, Exs. D–G.)

The bill of lading's terms and conditions further render the "Merchant"—i.e.,
defendant—liable "for all the various undertakings, responsibilities and liabilities of
the Merchant under or in connection with" the bill of lading. (Id. Ex. B, at ¶ 2.) The
contract is clear: "The Merchant is required and has the responsibility to return to a
place nominated by the Carrier the Container and other equipment before or at the
end of the free time allowed at the Port of Discharge or the Place of
Delivery. Demurrage, per diem and detention charges will be levied and payable by
the Merchant thereafter in accordance with the Tariff." (Id. ¶ 25, Ex. B, at ¶ 14.8
(emphasis added).)

It is undisputed that the four containers in question were not cleared from the ports of discharge within the free time allowed by plaintiff's tariff. (Pl.'s 56.1 ¶¶ 18, 22, 26, 30; Def.'s 56.1 ¶¶ 18, 22, 26, 30; Krusen Decl. ¶ 10.) The "Merchant," defendant, is thus liable to the shipper, plaintiff, for all demurrage costs. (Krusen Decl. ¶ 25, Ex. B, at 14.8.) See, e.g., Mediterranean Shipping Co., (USA) Inc. v. Worldwide Freight Servs., Inc., No. 10-cv-9445 (HBP), 2012 WL 3740683 (S.D.N.Y. Aug. 2012); Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., No. 10-cv-5070 (THK), 2011 WL 6288422 (S.D.N.Y. Dec. 15, 2011). Summary judgment is therefore appropriate. See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1147 (2d Cir. 1992) ("Where the language of a contract is clear, summary judgment is appropriate . . . .").

Defendant does not dispute the terms and conditions of the bills of lading, nor does it dispute that the four containers were not cleared from the terminal at the port of discharge within the free time allowed by plaintiff's tariff, thus accruing demurrage. (Pl.'s 56.1 ¶¶ 18, 22, 26, 30; Def.'s 56.1 ¶¶ 18, 22, 26, 30; Krusen Decl. ¶ 10.) Defendant also does not appear to dispute the amount of demurrage owed to plaintiff—$232,984—though it does disclaim liability as to that amount. (Pl.'s 56.1 ¶ 33; Def.'s 56.1 ¶ 33.)

While not disputing the terms of the bills of lading, defendant raises one dispute of fact regarding an alleged principal-agent relationship. Defendant argues that it was acting as an agent of the shippers identified on the bills of lading (Def.'s Mem. of L. in Opp. to Pl.'s Mot. ("Def.'s Opp.") 9, ECF No. 41), and that, when "an

8

agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract." <u>Seguros Banvenez, S.A. v. S/S Oliver Drescher</u>, 761 F.2d 855, 860 (2d Cir. 1985). Plaintiff responds that it entered into contracts with defendant only, not defendant as an agent for other parties; it points out that the shipping confirmations list only defendant's name as the shipper, not any purported principal, and that defendant failed to correct any alleged errors. (<u>See</u> Krusen Decl. ¶ 9, Exs. A, C; Pl.'s Mem. of L. in Further Supp. of Summ. J. ("Pl.'s Reply") 2–4, ECF No. 46.) Plaintiff also argues that, because defendant failed to disclose the identity of the principal "at or before the time when the contractual agreement [was] made final," it cannot avoid liability for breach of contract. <u>CMA-CGM (Canada), Inc. v. World Shippers Consultants, Ltd.</u>, 921 F. Supp. 2d 1, 7 (E.D.N.Y. 2013) (citing <u>Orient Mid-East Lines v. Albert E. Bowen, Inc.</u>, 458 F.2d 572, 575 (2d Cir. 1972)). Defendant responds that Arben Hodza, defendant's employee, explained to plaintiff's representatives over the telephone that defendant was acting as an agent for other parties. (Def.'s Opp. 9; Hodza Decl. ¶ 5.)[1]

This dispute is immaterial to the Court's decision. The terms and conditions of the bills of lading define "Merchant" as, <u>inter alia</u>, "the Shipper, Consignee, . . . or anyone acting on behalf of this Person." (Krusen Decl. Ex. B, at ¶ 1.) Accordingly, even assuming that defendant was acting as an agent for other parties, defendant

---

[1] The Court also notes that Teri Krusen, the Export Manager of the Unclaimed and Abandoned Department at plaintiff's Cleveland, Ohio office, stated her "understanding that the defendant, AA, arranged the shipment in suit on behalf of third parties." (Krusen Decl. ¶ 12.)

9

falls within the definition of "Merchant." Because the bills of lading place responsibility for demurrage squarely on the "Merchant," defendant cannot avoid liability.

### 2.   Legal Expenses

Plaintiff also argues that it is entitled to legal fees and expenses that it has incurred in connection with the collection of demurrage charges. Paragraph 14.7 of the bill of lading provides as follows:

> <u>If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever</u>, including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any <u>loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay</u>. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, <u>including reasonable legal expenses and costs resulting from such action</u>, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

(<u>Id.</u> ¶ 25, Ex. B, at ¶ 14.7 (emphasis added).) Plaintiff argues that the phrase "reasonable legal expenses and costs resulting from such action" entitles it to legal expenses associated with this lawsuit.

Plaintiff's argument fails. Paragraph 14.7 states that plaintiff is entitled to recover "legal expenses and costs resulting from such action." (<u>Id.</u> Ex. B, at ¶ 14.7.) However, "such action" named in the contract does not refer to a lawsuit seeking demurrage. Rather, paragraph 14.7 deals with an "order of the authorities" by which "Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected." (<u>Id.</u>) Under a fair reading of this provision of the contract, plaintiff is entitled to recover legal expenses and costs incurred in responding to an

10

order to detain goods, seize goods, or open a container for goods to be inspected, including opening, unpacking, inspection, re-packing, detention, destruction or delay—not legal fees incurred in a lawsuit to pursue demurrage. Because plaintiff has proffered no evidence that any of the actions listed in paragraph 14.7 occurred, it is not entitled to attorney's fees.

Plaintiff also relies on two other provisions that are inapposite here. (See Pl.'s Mem. of L. in Supp. of Summ. J. ("Pl.'s Mot.") 19, ECF No. 35.) Paragraph 20.2 does not refer to legal fees at all. Paragraph 14.9 refers to "legal expenses and costs of recovering the costs incurred" in "reinstating or replacing Containers and other equipment not returned in [good] condition." (Id. Ex. B, at ¶ 14.9) Plaintiff has proffered no evidence of such actions.

For these reasons, the Court denies plaintiff's motion for summary judgment as to its legal expenses.

### B.     Defendant's Counterclaims

Plaintiff is also entitled to summary judgment dismissing defendant's counterclaims. The Court notes that defendant did not oppose plaintiff's motion for summary judgment with respect to its counterclaims. (See generally Def.'s Opp.)

#### 1.     The Shipping Act

Defendant's first counterclaim alleges discrimination and refusal or failure to deal and negotiate under the Shipping Act. However, the Shipping Act does not provide for a private cause of action in federal district court; rather, alleged violations of the Shipping Act must be addressed with the Federal Maritime Commission. See Gov't of Guam v. Am. President Lines, 28 F.3d 142, 144 (D.C. Cir.

11

1994) (affirming a district court's dismissal of a Shipping Act claim due to lack of jurisdiction); <u>D.L. Piazza Co. v. West Coast Line</u>, 210 F.2d 947, 948 (2d Cir. 1954) (explaining that "the Federal Maritime Board has exclusive primary jurisdiction over" matters "under the Shipping Act").

Additionally, the sections of the Shipping Act that defendant claims plaintiff violated—sections 10(d)(3) and (4) of the Shipping Act—apply only to "marine terminal operators." <u>See</u> 46 U.S.C. app. § 1709(b)(10), (b)(13), (d)(3)–(4) (stating that marine terminal operators may not "unreasonably refuse to deal or negotiate," "knowingly disclose . . . any information concerning . . . property tendered or delivered to a common carrier without the consent of the shipper," or "give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person"). It is undisputed that plaintiff was not a marine terminal operator, but a vessel-operating common carrier; defendant proffers no evidence indicating otherwise. (<u>See</u> Krusen Decl. ¶ 3.)

For these reasons, plaintiff is entitled to summary judgment on defendant's first counterclaim.

### 2. Setting off and recoupment

Defendant's second counterclaim alleges that plaintiff abandoned, sold, or disposed of certain unclaimed goods, and is required to credit defendant for those amounts. (Compl. ¶ 31.) Accordingly, defendant seeks a recoupment, <u>i.e.</u>, "a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only

to be recovered." <u>Westinghouse Credit Corp. v. D'Urso</u>, 278 F.3d 138, 146 (2d Cir. 2002).

Of the four containers at issue in this case, two have been returned to plaintiff, and two remain in the custody of Brazilian port officials and continue to accrue demurrage. (Krusen Decl. ¶¶ 32, 37, 42, 48.) Only the two containers that have been returned to plaintiff have had their goods "disposed of." However, according to Krusen, plaintiff lacks control over the property within containers that it ships once they are discharged from plaintiff's vessel. (<u>Id.</u> ¶ 11.) Rather, once the containers arrive in Brazil, they become subject to the local customs authorities, who are responsible for arranging proper disposition in conjunction with the owners of the cargo in the containers. (<u>Id.</u>) Accordingly, while it appears that some party other than defendant was indeed responsible for selling or disposing of the cargo, that party was not plaintiff. (<u>Id.</u>) Defendant does not dispute these facts, and does not proffer evidence showing that plaintiff was responsible for selling or disposing of cargo such that defendant is entitled to recoupment. Summary judgment is therefore appropriate in plaintiff's favor.

For these reasons, plaintiff is entitled to summary judgment on defendant's second counterclaim.

IV.    CONCLUSION

For the foregoing reasons, plaintiff's motion is GRANTED IN PART and DENIED IN PART as to plaintiff's legal expenses. The parties shall confer and submit a proposed judgment to the Court, reflecting demurrage but not legal expenses, within 10 days, or no later than **Thursday, July 3, 2014**.

The Clerk of Court shall close the motion at ECF No. 30.

SO ORDERED.

Dated:        New York, New York
              June 23, 2014

                                        K  B. For
                                   _____
                                        KATHERINE B. FORREST
                                        United States District Judge

14